UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NATIONAL FUEL GAS DISTRIBUTION
CORPORATION

                Plaintiff,

                                                    17-CV-447

     v.


THE NEW YORK STATE RESEARCH AND
DEVELOPMENT AUTHORITY, THE UNITED
STATES DEPARTMENT OF ENERGY, and
CH2M HILL BWXT WEST VALLEY, LLC,

                Defendants.
_____

### DEFENDANT'S, UNITED STATES DEPARTMENT OF ENERGY, MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

This Memorandum of Law is submitted on behalf of defendant, United States Department of Energy ("DOE"), in support of its motion, for an order, pursuant to Fed. R. Civ. P. 12(b)(1), dismissing plaintiff's, National Fuel Gas Distribution Corporation ("National Fuel"), complaint.

### STATEMENT OF FACTS

**A.**    **Background of the Western New York Nuclear Service Center (WNYNSC).**

The Western New York Nuclear Service Center ("WNYNSC"), is an approximately 3,300-acre site located in West Valley, New York, approximately 30 miles south of Buffalo, New York, owned by co-defendant, New York State Energy Research and Development Authority ("NYSERDA"), improperly sued as New York State Research and Development

1

Authority. Record of Decision: Final Environmental Impact Statement for Decommissioning and/or Long-Term Stewardship at the West Valley Demonstration Project and Western New York Nuclear Service Center, 75 FR 20582-02. From 1966 to 1972, the WNYNSC was operated by a private corporation, Nuclear Fuel Services, Inc. ("NFS"), and was the first, and only, site in the nation that commercially reprocessed spent nuclear fuel. 75 FR 20582-02. NFS constructed and operated a fuel reprocessing plant and burial grounds, processing 640 metric tons of spent nuclear fuel under an Atomic Energy Commission (now Nuclear Regulatory Commission) license. 75 FR 20582-02.

In 1976, NFS after citing to major changes in regulatory requirements announced it was withdrawing from the nuclear fuel reprocessing business and exercised a contractual right to yield responsibility for the WNYNSC to NYSERDA, the site's owner. 75 FR 20582-02. "In 1976, NFS surrendered title to the Site to NYSERDA [New York State Research and Development Authority], and litigation ensued in this court regarding the terms and conditions of the agreements governing the operation, maintenance and responsibility for facilities used for reprocessing spent fuel and storage of radioactive waste." New York v. United States, No. 06-CV-810-JTC, 2013 WL 6175830, at *1–4 (W.D.N.Y. Nov. 22, 2013) (citing New York State Energy Research and Development Authority v. Nuclear Fuel Services, Inc., 640 F.Supp. 1558, 1560 (W.D.N.Y.1986). "In February 1982, the court approved a Settlement Agreement under which the State released NFS from liability under the agreements, in exchange for payment by the company of about $20 million." Id.

**B.     The DOE's Presence at WNYNSC**

In 1980, the United States Congress passed the West Valley Demonstration Project Act ("WVDPA") which directed the DOE Secretary to carry out a high-level radioactive

waste management demonstration project at the WNYNSC for the purpose of demonstrating solidification techniques that can be used for preparing high- level radioactive waste for disposal.  P.L. 96-368 at §2(a) (1980).  The WVDPA requires the Secretary to carry out the following acts:

1. Solidify, in a form suitable for transportation and disposal, the high-level radioactive waste at the WNYNSC;

2. Develop containers suitable for the high-level radioactive waste's permanent disposal;

3. As soon as feasible, transport the solidified waste to a Federal repository for permanent disposal;

4. Dispose of low-level radioactive waste and transuranic waste produced by the solidification of the high-level radioactive waste; and

5. Decontaminate and decommission the tanks and other facilities used at the WNYNSC in which the high-level radioactive waste was solidified, the facilities used in the waste's solidification, and any material and hardware used in connection with the West Valley Demonstration Project.  P.L. 96-368 at §2(a)(1)-(5).

The WVDPA expressly prohibits DOE from taking title to the high-level waste or the WNYNSC or any portion of the WNYNSC.  P.L. 96-368 at §5(b).  Since DOE cannot own any real property or facilities at the WNYNSC, the WVDPA required DOE to enter into a Cooperative Agreement with New York State to gain access to the requisite facilities and the high-level radioactive waste.  P.L. 96-368 at §2(4).

The DOE and NYSERDA entered into a Cooperative Agreement, effective October 1980, which affords DOE access and control of currently approximately 150-acres within the WNYNSC, which is commonly referred to as the West Valley Demonstration Project ("WVDP"), to fulfill the requirements set forth in the WVDPA. http://www.wv.doe.gov/Documents/DOE_NYSERDA_Cooperative_Agreement.pdf. The DOE contracts with a third-party to perform the operations under the WVDPA. Currently, co-defendant, CH2M HILL BWXT WEST VALLEY, LLC, ("CHBWV"), is the prime contractor for the DOE at the WVDP. See, http://www.chbwv.com/.

Since the DOE's arrival in 1982, the DOE has made great progress in completing the acts required under the WVDPA. http://www.wv.doe.gov/Site_History.html. The DOE removed over 600,000 gallons of radioactive waste from underground tanks. http://www.wv.doe.gov/Site_History.html The high-level waste component has been vitrified into glass, which remains safely stored at the WVDP in 275 stainless steel canisters waiting for final disposal at an approved Federal repository. http://www.wv.doe.gov/ (click on general links and vitrification cell); http://www.chbwv.com/HLW_Canister_Relocation.htm. The low-level portion was disposed at an off-site radioactive waste disposal facility. http://www.wv.doe.gov/ (click on general links and site). The DOE also has demolished miscellaneous facilities and is deactivating the vitrification facility and main plant process building for future demolition. http://www.chbwv.com/Facility_Deactivation_and_Demolition.htm.

**C.**     **National Fuel's Allegations**

National Fuel supplied natural gas to the WNYNSC since NFS was performing reprocessing operations, over two decades before the DOE's presence at the WNYNSC. Dkt. # 1, Exh. 1, ¶ 14; Decommissioning and Decontamination: The Nuclear Fuel Services Reprocessing Plant in West Valley, N.Y.: Hearing Before the House Subcomm. on the Env't and the Atmosphere of the Comm. on Sci. and Tech., 95th Cong. 10-12 (1977).  Now, after approximately 54 years of service, National Fuel seeks to cease natural gas service to the WNYNSC alleging that its natural gas pipeline on the WNYNSC is in deteriorating condition.  Dkt. # 1, Exh. 1, ¶¶ 16-17.  National Fuel contends that it is unable to repair and/or replace its pipeline due to nuclear waste contamination at the WNYNSC and "that continued service of gas through that pipeline is not safe."  Dkt. # 1, Exh. 1, ¶¶ 18, 20. National Fuel commenced this action against not only the DOE as an alleged necessary but not indispensable party due to the DOE's control over the WVDP, but also NYSERDA, the real property owner, and CHBWV, whom National Fuel alleges is the National Fuel customer.  Dkt. #1, Exh. 1, ¶4-7.

National Fuel asserts a breach of contract claim alleging a breach of National Fuel's "Tariff" for failure to provide National Fuel with safe access to the property to repair and/or replace its pipeline.  Dkt. # 1, Exh. 1, ¶¶ 26-32.  Although only CHBWV is a National Fuel customer, National Fuel's breach of contract claim is asserted against, collectively, "Defendants."  Dkt. # 1, Exh. 1, ¶¶ 26-32.  Indeed, in its second cause of action seeking a declaratory judgment, National Fuel seeks a declaration that "Defendants" have violated National Fuel's Tariff.  Dkt. # 1, Exh. 1, ¶ 41.

## PROCEDURAL HISTORY

National Fuel commenced this action in New York State Supreme Court, Erie County on May 5, 2017. Dkt. # 1, Exh. 1, p. 1. On May 10, 2017, National Fuel moved, through an Order to Show Cause, for a preliminary injunction. Dkt. # 1, Exh. 2. The motion was returnable on June 1, 2017. Dkt. # 1, Exh. 9.

On May 22, 2017, the DOE removed this action to this Court pursuant to 28 U.S.C. § 1442. Dkt. # 1.

## SUMMARY OF ARGUMENT

National Fuel's complaint fails on at least three fundamental jurisdictional grounds. As stated in Point I(B), National Fuel's complaint must be dismissed on the basis of sovereign immunity as National Fuel has not alleged any basis for a waiver of sovereign immunity that would permit this suit.

As stated in Point I(C) below, this action must be dismissed under the doctrine of derivative jurisdiction – that is, this Court, upon removal, only obtains the jurisdiction of the state court from which the case was removed. Since the state court obviously lacks subject matter jurisdiction over the DOE, this Court, upon removal, also lacks jurisdiction over the DOE.

As stated in Point I(D), assuming that National Fuel is attempting to assert an express or implied contract claim against the DOE, such a claim can only be heard in the United States Court of Federal Claims.

## POINT I

## THE COURT LACKS JURISDICTION OVER THE DOE

**A.**   **Standard of Review on a 12(b)(1) Motion**

Plaintiff bears the burden of establishing this Court's subject matter jurisdiction. Luckett v. Bure, 290 F.3d 493, 496- 497 (2d Cir. 2002).  Plaintiff also bears this burden when sovereign immunity is invoked on a motion to dismiss for lack of subject matter jurisdiction. Chayoon v. Chao, 355 F.3d 141, 143 (2d Cir. 2004) (quoting Garcia v. Akwesasne Housing Authority, 268 F.3d 76, 84 (2d Cir. 2001)).  While "a motion to dismiss for want of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) is reviewed under the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)," [Pennacchio ex rel. Old World Brewing Company, Inc. v. Powers, No. 05-CV-0985, 2007 WL 446355 (E.D.N.Y. Feb. 5, 2007)], "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."  Shipping Financial Services Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).

**B.**   **National Fuel's Complaint Must Be Dismissed As Against the DOE on the Basis of Sovereign Immunity**

"In any suit in which the United States is a defendant, there must be a cause of action, subject matter jurisdiction, and a waiver of sovereign immunity."  Presidential Gardens Associates v. U.S. ex rel. Secretary of Housing and Urban Development, 175 F.3d 132, 141 (2d Cir 1999).  "The waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction."  Presidential Gardens, 175 F.3d at 139.  Absent a waiver, sovereign immunity shields the federal government, its agencies, and employees from suit.  F.D.I.C. v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 1000 (1994) (citing Loeffler v. Frank, 486 U.S. 549, 554,

108 S.Ct. 1965, 1968, 100 L.Ed.2d 549 (1988); Federal Housing Administration v. Burr, 309 U.S. 242, 244, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940)). Sovereign immunity is jurisdictional in nature. Meyer, 510 U.S. at 475. Even when the United States waives sovereign immunity, it may do so in a limited or conditional manner: the United States retains its immunity except "'as it consents to be sued . . ., and the terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit.'" Meyer, 510 U.S. at 475 (quoting United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941)); see also United States v. Mitchell, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction"). Congress may choose to waive the sovereign immunity of the United States but may do so only through unequivocal statutory language. Lane v. Pena, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text ... and will not be implied.") (citations omitted).

It is the plaintiff's burden to demonstrate that sovereign immunity has been waived. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). An action commenced against a federal agency or a federal officer in his or her official capacity is treated as a lawsuit against the United States. Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Accordingly, suits against federal agencies are barred under the doctrine of sovereign immunity, unless that immunity has been expressly waived. Meyer, 510 U.S. at 475.

Here, National Fuel has alleged no basis for a waiver of sovereign immunity that would permit this suit against the DOE. Accordingly, National Fuel's complaint must be dismissed as against the DOE on the basis of sovereign immunity.

**C.    The Court Lacks Jurisdiction Under the Doctrine of Derivative Jurisdiction**

When a case is removed from state to federal court under 28 U.S.C. § 1442, the jurisdiction of the federal court is derived from the state court's jurisdiction. State of Minnesota v. United States, 305 U.S. 382, 389, 59 S.Ct. 292, 83 L.Ed. 235 (1939). In other words, "[t]he jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction." Lambert Run Coal Co. v. Baltimore & O.R. Co., 258 U.S. 377, 382, 42 S.Ct. 349 (1922); State of Minnesota, 305 U.S. at 389. Under the doctrine of derivative jurisdiction, "[a] district court must dismiss a complaint if the state court from which the case was removed lacked jurisdiction." Nordlicht v. N.Y. Tel. Co., 799 F.2d 859, 863 (2d Cir.1986), abrogated on other grounds as stated in, Fax Telecommunicaciones Inc. v. AT&T, 138 F.3d 479, 486 (2d Cir. 1998). "This result obtains even if the reason the state court lacked jurisdiction is that the complaint lies within the exclusive jurisdiction of the federal courts." Id., Lambert Run Coal Co., 258 U.S. at 382.

For example, the Federal Tort Claims Act ("FTCA") is the exclusive avenue for bringing tort claims against the United States. 28 U.S.C. § 2679(b)(1) (remedy against the United States under the FTCA is "exclusive"). And, the federal district courts have "exclusive" jurisdiction over claims brought under the FTCA. 28 U.S.C. § 1346(b)(1). Thus, no state court has jurisdiction to hear a negligence claim asserted against the United States. Mooney v. GAC Realty Corp., No. 14–CV–6207–FPG, 2015 WL 1010486 (W.D.N.Y. Mar. 5, 2015). By virtue of the derivative jurisdiction doctrine, since a state court lacks jurisdiction

over a tort claim asserted against the United States, then the federal court upon removal of said claim also lacks jurisdiction and the claim must be dismissed. Id.

For example, in Mooney, plaintiff slipped on ice in a parking lot and subsequently sued the owner of the lot in New York State Supreme Court, Livingston County. Id. at 1. The defendant then filed a third-party complaint against the United States Postal Service alleging that the Postal Service leased the lot and was responsible for snow removal thereon. Id. The Postal Service removed the action to this Court which then, under the doctrine of derivative jurisdiction, held that

> Because the Livingston County Supreme Court never had jurisdiction over the USPS and/or the United States, this Court acquired no jurisdiction over them upon removal. As such, the claims against the USPS and/or the United States must be dismissed for lack of subject matter jurisdiction pursuant to the derivative jurisdiction doctrine.

Id. at 3.

Derivative jurisdiction also applies to contract disputes with a federal agency that are brought in state court and then removed to federal court under § 1442. Lombardi v. United States, No. 15-CV-1047-A, 2016 WL 1604492, at *3 (W.D.N.Y. Apr. 22, 2016). In Lombardi, plaintiffs sued the United States Postal Service in small claims court for $5,000 for its failure to mail wedding invitations. The Court construed the pro se complaint as a possible attempt to assert a small claims contract claim under the Little Tucker Act, 28 U.S.C. § 1346(a)(2). Id. at 3. A state court, of course, has no jurisdiction to hear a Little Tucker Act claim against the United States. Id. Accordingly, the Court dismissed the claim on the basis of derivative jurisdiction. Id.

Here, National Fuel has alleged no colorable basis for the state court's exercise of jurisdiction over the DOE. Since this case was removed to this Court under § 1442, this

Court's jurisdiction is derivative of the state court's jurisdiction. And, since the state court lacked jurisdiction over the DOE, then this Court also lacks subject matter jurisdiction over this action and the complaint must be dismissed.

**D.** **If National Fuel is Asserting a Contract Claim Against the DOE, then Exclusive Jurisdiction Lies in the Federal Court of Claims**

The Tucker Act, 28 U.S.C. §§ 1346(a)(2) and 1491(a)(1) and (b)(1), "waives sovereign immunity as to contract claims against the United States," and gives the Court of Federal Claims exclusive jurisdiction to hear such claims. Presidential Gardens Associates, 175 F.3d at 141. In particular, § 1346(a)(2) provides, in pertinent part, that "the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States …." Section 1491 likewise grants the Federal Court of Claims jurisdiction to hear claims "founded … upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). Thus, any contract claim asserted against the United States may only be brought in the Federal Court of Claims. Up State Fed. Credit Union v. Walker, 198 F.3d 372, 375 (2d Cir. 1999) (if a claim "arises out of a contract … the Court of Claims has exclusive jurisdiction over the action.") (citations and internal quotation marks omitted).

Here, assuming that National Fuel is attempting to assert an express or implied contract claim against the DOE, that claim may only be brought in the Court of Federal Claims.

## **CONCLUSION**

For the foregoing reasons, defendant's, United States Department of Energy, motion to dismiss must be granted.

DATED: Buffalo, New York, May 23, 2017

                                          JAMES P. KENNEDY, JR.
                                        Acting United States Attorney


                    BY:     S/Michael S. Cerrone
                                        MICHAEL S. CERRONE
                                        Assistant U.S. Attorney
                                        U.S. Attorney's Office
                                        Western District of New York
                                        138 Delaware Avenue
                                        Buffalo, New York 14202
                                        716-843-5851
                                        michael.cerrone@usdoj.gov