UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

NATIONAL FUEL GAS DISTRIBUTION
CORPORATION,

                                   Plaintiff,

                                                                      17-cv-0447-EAW

vs.

THE NEW YORK STATE RESEARCH AND
DEVELOPMENT AUTHORITY, THE UNITED
STATES DEPARTMENT OF ENERGY, and
CH2M HILL BWXT WEST VALLEY, LLC,

                                  Defendants.
───────────────────────────────────────────────

## DEFENDANT NEW YORK STATE ENERGY RESEARCH AND DEVELOPMENT AUTHORITY'S MEMORANDUM OF LAW IN SUPORT OF MOTION TO DISMISS

### PRELIMINARY STATEMENT

       This Memorandum of Law is submitted on behalf of defendant New York State Energy Research and Development Authority ("NYSERDA"), in support of its motion for an order, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), dismissing the complaint by plaintiff National Fuel Gas Distribution Corporation ("National Fuel"). National Fuel's complaint requests that National Fuel be "allowed to abandon" its gas pipeline, "cease supplying gas service", and transfer pipeline ownership to NYSERDA (Complaint, ¶¶ 32, 41). The complaint significantly mischaracterizes the conditions at the Western New York Nuclear Services Center in West Valley, New York (the "Site"), as well as ignores applicable law. Regardless, on its face the complaint must be dismissed because it requests judicial intervention in a utility matter that is within the purview of the New York State Public Service Commission ("New York PSC" or

"Commission").

## APPLICABLE STATUTORY AND REGULATORY FRAMEWORK

By statute the New York PSC has broad supervision over utilities maintaining pipelines and distributing gas within the state. *See* New York Public Service Law § 66. The Commission is thus "authorized generally to prescribe the terms and conditions under which utilities shall extend their lines, the manner in which costs shall be borne, and the appropriate charges for such service." *Sleepy Hollow Lake, Inc. v. Public Service Com.*, 43 A.D.2d 439, 443 (3d Dep't 1974). Further, New York Public Service Law § 70 (1) prohibits a gas corporation from the "transfer . . . of any parts of [its] franchise, works or system . . . without the written consent of the Commission."

New York utilities are also governed by regulations issued by the New York Department of Public Service. Those regulations provide that a utility may terminate service, including a terminating for failure to provide access to make repairs, only after providing advance notice to the customer. 16 N.Y.C.R.R. § 13.3(a). That advance notice is required to explain the procedure for making a complaint to the utility and, if the customer is not satisfied with the utility's handling of the complaint, the procedure for making a complaint to the Commission. *Id.* § 13.3(b). If a customer makes a complaint to the Commission, service may not be terminated pending resolution of the complaint. *Id.* § 13.3 (c)(7).

## NATIONAL FUEL'S COMPLAINT

As stated in the complaint, National Fuel provides natural gas to eleven counties in New York, and has supplied natural gas to the Site for many years (Complaint, ¶¶ 2, 14). As further explained, a nuclear fuel reprocessing center was formerly located at the Site and both the federal

Department of Energy (DOE) and NYSERDA are involved in cleaning up radioactive contamination at the Site (Complaint, ¶¶ 4-5).

The complaint alleges that National Fuel has not been able to repair leaks in its gas pipeline at the Site as a result of radioactive conditions there. Complaint, ¶ 20. The complaint further alleges that, as a result, National Fuel has been denied "reasonable access" to its pipeline for the purpose of repairing leaks, in violation of NY PSC Tariff No. 9 (the "Tariff"), which is applicable to the provision of gas service by National Fuel (*see* Complaint, ¶¶ 26-27). The complaint also alleges that the Tariff allows National Fuel to terminate service to non-residential customers for failure to provide reasonable access. Complaint, ¶ 27. The complaint does not allege that any written notice has been provided by National Fuel regarding termination of gas service at the Site.

While National Fuel's allegations must be accepted as true for the purposes of this motion to dismiss, NYSERDA disputes that radioactive contamination has prevented National Fuel from safely making repairs to its pipeline. NYSERDA also notes that both it and DOE monitor radioactive contamination at the Site and there is no allegation in the complaint that any member of the public, including any National Fuel employee, has ever been exposed to radioactive contamination. Indeed, National Fuel itself alleges that, after it claimed that it could not repair an earlier leak due to radioactive conditions, a third-party contractor with expertise in radioactive contamination was hired to repair the leak. Complaint, ¶¶ 18-19.

The complaint requests that National Fuel be "allowed to abandon" its gas pipeline at the Site, "cease supplying gas service", and transfer pipeline ownership to NYSERDA (Complaint, ¶¶ 32,41). The complaint does not allege that National Fuel has sought or obtained the written

consent of the New York PSC in this matter.

## ARGUMENT

### THE COMPLAINT SHOULD BE DISMISSED BECAUSE NATIONAL FUEL HAS NOT OBTAINED THE CONSENT OF THE NEW YORK PSC

The Court may not grant the relief National Fuel seeks – to abandon its pipeline and transfer it to NYSERDA, with cessation of service – because gas service may not be terminated without the Commission's consent. Since National Fuel has failed to obtain that consent or exhaust its administrative remedies, the complaint should be dismissed. For similar reasons, the Court should dismiss the complaint out of deference to the Commission under the *Burford* abstention doctrine.

**1. National Fuel May Not Abandon Its Pipeline and Cease Service to the Site Without the Commission's Consent.**

National Fuel's request to allow it to abandon its pipeline, transfer it to NYSERDA, and terminate service to the Site is by statute expressly within the authority of the New York Public Service Commission to allow, or not to allow. *Spring Brook Water Co. v. Hudson Falls,* 269 A.D. 515, 519 (3rd Dept. 1945). New York Public Service Law § 70(1) provides in pertinent part: "No gas corporation . . . shall transfer or lease its franchise, works or system or any parts of such franchise, works or system to any other person or corporation . . . without the written consent of the [Public Service] Commission."

The court in *Spring Brook Water Co.* made it clear that § 70 of the New York Public Service Law requires the Commission's consent for a transfer that would, as sought by National Fuel here, lead to the cessation of service and abandonment.

4

> It is apparent upon the face of [Public Service Law Section 70] that the regulatory power of the Commission in respect to transfers or leases of the works or systems of the utility companies was intended to be operative with respect to the transferor, rather than the transferee. These enactments are designed to regulate the disposition of operating properties by utility companies . . .
>
> It is unimportant to *whom* the properties are to be transferred or leased; the vital fact under the statutory provisions is that a public utility company is proposing to part, permanently or under lease, with some or all of its operating properties, and this they may not do "without the written consent of the commission" (Public Service Law, §§54, 63, 70, 83, 89-h).
>
> The fundamental question in this case is whether a public utility corporation, having embarked upon a public enterprise and having dedicated its property to the public use and having assumed the obligation to serve the public, can cease rendering such service without the consent of the Public Service Commission.
>
> The transfer sections of the Public Service Law . . . are a part of the statutory scheme by which rate schedules are to be kept on file, under the supervision of the Public Service Commission and service continued thereunder until the consent of the Commission has been obtained to a cessation of service . . . The Commission is entitled to inquire into the question of whether adequate service to the public will be continued after the transfer, or whether sufficient reason exists for abandonment of service, if service is to be abandoned.

*Spring Brook Water Co. v. Hudson Falls,* 269 A.D. at 519 (emphasis in original).

Accordingly, National Fuel's complaint is not cognizable in this Court because the relief sought may only be granted upon the written consent of the New York PSC.

**2. National Fuel Has Not Exhausted Its Administrative Remedies.**

Similarly, National Fuel has failed to avail itself of the New York PSC process that is legally required in order for it to obtain the relief it seeks, nor has it provided NYSERDA the opportunity to seek relief from the Commission as also required. "Where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be

dismissed." *Reiter v. Cooper,* 507 U.S. 258, 269 (1993) (citations omitted). Indeed, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Miss Am. Org. v. Mattel, Inc.*, 945 F.2d 536, 540 (2d Cir. 1991) (quoting *McKart v. United States*, 395 U.S. 185, 193 (1969)). Not only may "vindication of rights in the administrative process . . . eliminate any need for judicial action," thereby promoting judicial efficiency, the "deliberate by-passing of administrative processes over time would make the administrative agency ineffectual." *Id.* Requiring that administrative remedies be exhausted allows agencies to develop the necessary factual background, and to initially exercise their discretion or apply their expertise. *Id.*

Applicable law provides that National Fuel must seek and obtain the written consent of the New York PSC before it may abandon its pipeline with cessation of service and transfer of ownership. Because National Fuel has not done so, its complaint must be dismissed under the doctrine of exhaustion of administrative remedies. *Reiter*, 507 U.S. at 269.

### 3. The Court Should Defer to the Commission Under the Burford Absention Doctrine.

In *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), the Supreme Court explained that abstention by a federal court is appropriate in deference to a state regulatory process, thereby avoiding interference with attempts to establish coherent state policy and issues that are traditionally of local concern. This is known as *Burford* abstention, and courts have looked to several factors in determining its applicability: "(1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern." *City of New York v. Milhelm Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 342 (E.D.N.Y. 2008) (citing *Bethphage*

*Lutheran Service., Inc. v. Weicker,* 965 F.2d 1239, 1243 (2d Cir. 1992)).

That being said, "[e]very abstention case is to be decided upon its particular facts and not with recourse to some 'mechanical checklist[.]'" *Bethphage Lutheran Service, Inc.*, 965 F.2d at 1245 (citation omitted). Essentially, *Burford* abstention allows federal courts to avoid the danger of "disrupting a state administrative apparatus." *Dittmer v. County of Suffolk*, 146 F.3d 113, 117 (2d Cir. 1998); *see also Feiwus v. Genpar, Inc.*, 43 F. Supp. 2d 289, 294 (E.D.N.Y. 1999) ("Burford abstention is generally implicated when a federal court determines that the federal interest in retaining jurisdiction over a dispute properly before it is outweighed by the state's interest in adjudicating the issues in its own forum."). "A motion to dismiss based on the abstention doctrine is also considered as a motion made pursuant to Rule 12 (b)(1)." *City of New York v. Milhelm Attea & Bros., Inc.,* 550 F. Supp. 2d at 341.

Here National Fuel seeks an order allowing it to abandon its pipeline, with cessation of service and transfer of ownership, based on an alleged Tariff violation. As previously explained, the relief that National Fuel seeks falls within the express authority of the New York PSC to allow, or not to allow. *Spring Brook Water Co.*, 269 A.D. at 519; New York Public Service Law § 70(1). Here the state regulatory scheme is highly specific, the need to construe the state statute and applicable state law is plain, and the subject matter, namely the obligations of a state-regulated public utility to its customer, is traditionally of state concern. *City of New York v. Milhelm Attea & Bros., Inc.*, 550 F. Supp. 2d at 342.

Moreover, the state regulatory scheme also gives NYSERDA the right to advance notice of the termination and an opportunity to be heard by the Commission. 16 N.Y.C.R.R. § 13.3. By seeking judicial intervention at this juncture, National Fuel has deprived NYSERDA of the

opportunity to have this matter resolved in the first instance by the state agency that has authority over utilities and the expertise to decide whether a utility should be allowed to terminate service.

The danger here is not just the disruption of the state administrative process; it is National Fuel's attempt to circumvent that process entirely. As such, abstention is appropriate and NYSERDA's motion to dismiss should be granted.

## **CONCLUSION**

For the foregoing reasons, NYSERDA's motion to dismiss should be granted.

DATED: May 31, 2017
Buffalo, New York

                                     ERIC T. SCHNEIDERMAN
                                     Attorney General of the State of New York
                                     Attorney for Defendant NYSERDA
BY:    */s/ Timothy Hoffman*
                                       TIMOTHY HOFFMAN
                                       Assistant Attorney General, of Counsel
                                       Main Place Tower
                                       350 Main Street, Suite 300A
                                       Buffalo, New York 14202
                                       (716) 853-8465
                                       Timothy.Hoffman@ag.ny.gov